No. 4019

Second Circuit

BROWN PAPER MILL CO., INC., v. FISHER, TAX ASSESSOR, ET AL.

(May 20, 1931. Opinion and Decree.)

(See also, 171 La. 206, 130 So. 44.)

Shotwell & Brown, of Monroe, attorneys for plaintiff, appellee.

Harry Fuller, of Winnfield, Percy Saint and R. A. Viosca, of New Orleans, and V. M. Mouser, of Columbia, attorneys for defendants, appellants.

McGREGOR, J. Plaintiff brings this suit for the reduction of its tax assessment for the year 1929, in the parish of Caldwell. On April 1, 1929, it was the owner of several thousand acres cut-over, denuded pine land which it valued at $5 per acre for assessment purposes. Some time prior to April 1, 1929, it made a regular return of its property to the as-

sessor in due form and properly sworn to. Between the date of this return and April 2, 1929, it acquired 880 acres more of the same kind of land, and on April 2, 1929, wrote a letter to the tax assessor and apprised him of the fact, giving a detailed description of the land and asked that it be added to its assessment at $5 per acre. This letter, however, was not sworn to. Instead of assessing plaintiff's land at $5 per acre, as they were returned by it, the tax assessor listed the land at $6, and in addition thereto undertook to assess the standing timber on the land separately at the sum of $15,690.

Within the time and in the manner provided by law, plaintiff appealed to the Louisiana tax commission and to the board of equalization of Caldwell parish for relief, with the result that the land was reduced to $5.50 per acre. When it could not secure all the relief sought, plaintiff brought this suit to compel the reduction of the assessment to the figure named in its original return made to the assessor.

On trial in the lower court, there was judgment in favor of plaintiff, fixing the asssessment at $5.25 per acre on 66,556 acres, or $349,419. The defendants have appealed from this judgment, and plaintiff has answered the appeal and prayed that it be amended by reducing it to the figure prayed for in its original petition in the suit.

The only question really presented in this case is the fair valuation of plaintiff's lands for purposes of taxation. It is true that in their brief counsel for defendants stressed the fact that the letter of April 2, 1929, which adds 880 acres of land to the list included in the regular return, was not sworn to, and that the assessment on that land cannot be reduced by any judgment rendered in this case.

This is not important. If the letter is disregarded entirely, 880 acres would have to be deducted from plaintiff's assessment, for there is no evidence whatever in the record as to the description of plaintiff's land to be assessed or as to the acreage, except what is found in plaintiff's petition and the list of lands attached to its returns and this letter of April 2, 1929. The defendants offer no testimony whatever in regard to the assessment, except certain deeds to portions of plaintiff's lands for the purpose of showing the prices paid, and extracts from the assessment rolls of 1927 and 1928, showing that the plaintiff's cut-over lands were assessed at $6 per acre. They never offered the assessment roll of 1929, however, to show the description, acreage, or assessment. Plaintiff offered this assessment roll of 1929, covering its lands, but it was never placed in the record, so that the only way the court could arrive at the assessment is to take it from plaintiff's petition and its returns made to the assessor, and to include therein the lands described in the letter objected to.

While defendants objected strenuously to the admission of this letter, no possible harm can be done by its admission. The only possible effect of its absolute exclusion would be the elimination of this 880 acres from plaintiff's assessment. There is no evidence anywhere that this land is assessed at all to plaintiff, even though it is willing to pay the taxes on it. On the contrary, in the absence of the assessment covering plaintiff's property, the presumption would be that it is not assessed. Plaintiff in its petition admits that it should pay taxes for 1929 on 66,556 acres, but in its recital of what the assessment roll contained, it enumerates only 65,886 acres. It requires this additional land to bring the acreage up to what plaintiff

admits it should be assessed with. But aside from all this, the minutes of the court show the following entry on January 15, 1931:

"Defendants withdraw objection set out in paragraph No. 2 of its answer to the failure of plaintiff to timely file a sworn rendition by April 1, 1929, of the property described in said paragraph No. 2, in so far as said objection applies to the assessed valuation of said property."

The said paragraph 2 of defendants' answer particularly describes the lands described in plaintiff's letter of April 2, 1929, so it would seem that defendants pressing this objection in their brief is superfluous, as they appear to have withdrawn the entire paragraph in so far as it affects this suit. In their brief, counsel for defendants in referring to the 880 acres, say:

"It is, therefore, respectfully submitted that the lower court erred in reducing the assessment of the property hereinabove described to any extent whatever; that plaintiff should be condemned to pay all taxes levied against said described property together with interest, penalties, attorney's fees and costs."

In view of the admission found in the minutes of the court, we do not see how the defendants can further urge this objection. The lower court appears to have ignored it and we do the same. So that, as we have already said, the only point at issue in the case is the fair valuation of the 66,556 acres of plaintiff's lands for assessment purposes.

During the years 1927 and 1928, plaintiff owned practically all of the land involved in this suit and it made its return to the assessor showing its value at $5 per acre, but each time the assessor raised it to $6, and plaintiff paid the taxes on that basis. In 1929, plaintiff protested against this raise and succeeded in getting it reduced to $5.50; and it was not satisfied even with this reduction and brought this suit to have the value fixed at $5.

The bulk of the land assessed to plaintiff in 1929 was bought by it from the Louisiana Central Lumber Company in 1926 for $6.12½ per acre. The same lands were offered to it about a year before for $5, and it refused to buy them. But in 1926, it had a special reason for increasing its acreage at once, so, in order to buy the land without delay, it agreed to the increased price. Even though it paid this price not only for this large tract, but for other similar adjacent tracts, during the same period, it insists in this suit that the actual fair value of the land is not over $5 per acre. To substantiate its claim, it produced a number of witnesses, some of whom were officers and employees of the plaintiff company, and some were disinterested parties. They all testified uniformly that the land in question was not worth over $5 per acre. One of these witnesses was J. E. Hanna, assessor of Ouachita parish. He testified that plaintiff's lands in Ouachita parish were assessed as follows:

14,562 acres at $5 per acre.
17,912 acres at $4 per acre.

Mr. W. N. Reynolds an independent dealer in pulp wood, who was reared in Caldwell parish and is thoroughly familiar with plaintiff's holdings in Ouachita and Caldwell parishes, testified that the Caldwell parish lands should not be valued at over $5, and that the lands in Ouachita parish were more valuable than that in Caldwell.

The evidence in the case is voluminous. The plaintiff called eight witnesses, but it

would be useless to enumerate all of them or to discuss the testimony of each. They uniformly agreed that $5 per acre was a fair valuation for the land, taken as a whole.

Defendants called only one witness, the assessor, one of the defendants. In addition to his testimony, there were offered numerous deeds to show that plaintiff had paid more than $6 per acre for practically all of its lands. Based on these deeds, the assessor contended that he was justified in the first instance in assessing the land at $6, and that the value of $5.50 fixed by the Louisiana tax commission should not be disturbed by the court.

The fact that land sells for a certain price at one time is not conclusive proof that it will sell for that price again. It is a matter of common knowledge that assessments of real estate are not regulated entirely by the purchase price paid at any one sale, and particularly is this true when the sale took place three years before, as is true in the present case. The fact that plaintiff, under peculiar circumstances in 1926, paid more for the bulk of their land in Caldwell parish than they are willing to admit that they are now worth, and that since that time they have bought a few isolated tracts at about the same price, is not sufficient proof of the fact that the land would have sold for that price in 1929. The real test laid down by the courts for the actual cash value is "the price in cash for which the property could be sold, free of all encumbrances, otherwise than at forced sale."

Sometimes the courts prefer to brush aside opinion evidence in matters of land values and rely solely on acts of sale covering the land in controversy, as well as adjacent lands. But in all cases it is profitable to know the circumstances surrounding the sale. It is evident that plaintiff was willing to pay an inflated price for this land for business purposes.

It is fundamental in our system of taxation that assessments must be uniform to the greatest possible degree. One of the best ways to determine values of land is to find the value of similar lands in the same community. In nineteen separate assessments, picked at random and covering 19,138 acres of cut-over land in Caldwell parish for the year 1929, the assessment was exactly $5 per acre. Six of these, covering 13,566 acres, were tracts of land belonging to the Louisiana Central Lumber Company, the company from whom plaintiff bought the bulk of its holdings for $6.12½. It is neither fair nor just to assess the plaintiff more than the rest of the owners of similar lands in the same parish. The record discloses that there are a number of instances in which landowners sold only a part of their cut-over land to plaintiff. That which they retained was assessed at $5, while that which they sold to plaintiff was assessed at $6, and reduced by the Louisiana tax commission to only $5.50.

In his testimony the assessor stated that if he could have done so, he would have assessed the small landowner at only $3 per acre on cut-over lands, and at the same time would have assessed the plaintiff at $6, because of the fact that in the future plaintiff's lands would become more valuable for paper mill purposes. The law does not sanction such discrimination. In assessing every other landowner in Caldwell parish, except plaintiff, at $5 per acre on cut-over land, the assessor demonstrated absolutely that he thought that that was a fair value for that character of land. His action with reference to those landowners speaks louder than words. Plaintiff's ownership of these lands does not enhance

their value. The Constitution of 1921, in article 10, sec. 1, says.:

"* * * All taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax. * * *"

In view of the overwhelming testimony in favor of the plaintiff and in view of the fact that all other owners of cut-over, denuded pine land in Caldwell parish are assessed at only $5 per acre, plaintiff's lands should be assessed for the same.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, amended by reducing plaintiff's assessment to $5 per acre on 66,556 acres of land, and, as thus amended, it is affirmed. The cost of appeal to be paid by the defendants.